IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| CLIFF URBAN | ) | PLAINTIFF DEMANDS |
| | ) | TRIAL BY JURY |
| Plaintiff, | ) | |
| | ) | Case No: 15-50301 |
| v. | ) | |
| | ) | Judge |
| TSA AGENT EDGAR ALTAMIRANO, ISABEL GARCIA, ALLEGIANT AIR, SGT BRUNO, OFFICER JOHNSON, DETECTIVE HACKBARTH, DETECTIVE GULLEY and THE CITY OF ROCKFORD | ) ) ) ) ) ) | Magistrate |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

NOW COMES Plaintiff CLIFF URBAN, by and through his attorneys, THE LAW OFFICES OF SCOTT T. KAMIN and complaining against TSA AGENT EDGAR ALTAMIRANO, ISABEL GARCIA, ALLEGIANT AIR, SGT BRUNO, OFFICER JOHNSON, DETECTIVE HACKBARTH, DETECTIVE GULLEY and THE CITY OF ROCKFORD, states as follows:

### JURISDICTION

1.  This action arises under 42 U.S.C. §1983, 28 U.S.C. §1367, and the Fifth and Fourteenth Amendments to the United States Constitution. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(a)(3).

### VENUE

2.  Venue is provided under 28 U.S.C. §§1391(b)(1) and (b)(2) in "a judicial district

where any defendant resides, if all defendants reside in the same State, or in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred....."

3. Upon belief, all individual Defendants reside in the State of Illinois and the Northern District of Illinois. And Defendant City of Rockford is located in the State of Illinois in the Northern District of Illinois.

4. The events giving rise to the claim involved in this cause occurred in the Northern District of Illinois.

**PARTIES**

5. Plaintiff CLIFF URBAN ("URBAN or Plaintiff") is a resident of Hammond, Indiana and freshman at Purdue University. He is a 26 year old African-American male with concealed carry permits in three States: Indiana, Utah and Arizona. These permits allow him to carry lawfully in forty-five states.

6. Defendant TSA AGENT EDGAR ALTAMIRANO ("ALTAMIRANO") was, at all times relevant to this action, employed with the TSA and assigned to the Rockford International Airport.

7. Defendant ISABEL GARCIA ("GARCIA") was, at all times relevant to this action, employed by Defendant ALLEGIANT AIR ("ALLEGIANT") at the Rockford International Airport, and was a resident of Winnebago County, Illinois.

8. Defendant HACKBARTH ('HACKBARTH") was, at all times relevant to this action, employed as a Detective with the Rockford Police Department, and was a resident of Winnebago County, Illinois.

9. Defendant GULLEY ("GULLEY), was, at all times relevant to this action,

employed as a Detective with the Rockford Police Department and was a resident of Winnebago County, Illinois.

10. Defendants JOHNSON and BRUNO were, at all times relevant to this action, employed as Officers with the Rockford Police Department and were residents of Winnebago County, Illinois.

11. Defendant CITY OF ROCKFORD is a municipal corporation located within Winnebago County and the Northern District of Illinois.

12. All individuals are sued in their individual capacities.

13. At all times relevant to this action, each of the named defendants acted under the color of the laws, regulations, and customs of the State of Illinois.

## FACTS

14. On November 27, 2013, Plaintiff was scheduled to fly to Las Vegas, Nevada to visit his mother. Plaintiff's flight originated at Rockford International Airport ("Airport") in Rockford, Illinois.

15. Plaintiff arrived at the Airport, went to Defendant ALLEGIANT's baggage check, checked his luggage with Defendant GARCIA, and declared his pistol.

16. As part of routine airport procedure, Defendant GARCIA asked Plaintiff to open his gun case and show her what he was declaring.

17. After she reviewed the contents of the gun case, Defendant GARCIA put a certificate of firearm declaration into the luggage, closed it and put it behind the counter.

18. Defendant GARCIA pointed out that Plaintiff had not included a lock for his gun case.

19.     Plaintiff apologized and retrieved the lock for his gun case from the car in which he had been driven.

20.     Defendant GARCIA estimated that Plaintiff took about ten minutes to return to the counter and give her a lock for the gun case.  The luggage containing the gun case was still behind the counter, in Defendant GARCIA's exclusive possession, and Defendant GARCIA simply took the lock from Plaintiff, gave him his plane ticket and reached into the luggage, presumably to affix the lock to the gun case.

21.     Plaintiff took his ticket and walked across the Airport to his departure gate.

22.     Plaintiff's plane was not scheduled to depart for about forty-five minutes and he grabbed a bite to eat while waiting for the plane.

23.     When the departure time approached, the passengers, including Plaintiff, formed a line.

24.     Plaintiff was the sole African-American in the line, if not in the entire Airport, and he was the only person in line chosen for a "random" search by Defendant ALTAMIRANO.

25.     After the search was completed, ALTAMIRANO apologized and wished Plaintiff well.

26.     A few minutes later, Plaintiff boarded his plane to Las Vegas.

27.     After about ten minutes, Defendant ALTAMIRANO boarded the plane, found Plaintiff, grabbed his arm and announced that he needed to leave the plane.

28.     On the walkway, Defendant ALTAMIRANO cuffed Plaintiff's hands behind his back and then paraded him back across the Airport to the TSA office.

29. Defendant ALTAMIRANO had another Airport employee call the Rockford police and tell them that the TSA had a "male in custody for *attempting to check in with a gun*." (Emphasis added). Of course, air passengers are supposed to check their guns so attempting to do so is clearly not a crime. Both defendants ALTAMIRANO and JOHNSON (who responded to the dispatch) knew such conduct was not criminal, yet acted as if Plaintiff was a criminal suspect.

30. Defendant JOHNSON met defendant GARCIA, who explained that she immediately suspected Plaintiff because of his strong odor of marijuana and the fact that he brought a loaded weapon into the Airport. Defendant GARCIA did not point out that in spite of Plaintiff's misconduct she issued him both a certificate of firearm declaration, and a boarding pass for the flight to Las Vegas.

31. Defendant GARCIA insisted that the magazine of the gun in the gun case was loaded. However, defendant JOHNSON checked the gun case and the magazine was empty.

32. Defendant JOHNSON then viewed Airport surveillance video that discredited defendants GARCIA and ALTAMIRANO, and showed that Plaintiff was doing nothing unlawful. However, Defendant JOHNSON did not want to discredit the Airport employees, claiming the video was too unclear and that he was too busy to pick up a copy of it.

33. Defendant Officers, known and unknown, continued to attempt to substantiate defendant GARCIA's and defendant ALTAMIRANO's claims that somehow Plaintiff's "attempting to check in with a gun" was illegal. Defendants BRUNO, HACKBARTH

and GULLEY claimed that Plaintiff's checked luggage and gun case presented with a strong odor of cannibas. Of course, if Plaintiff's property had really smelled of narcotics, it would have been even less likely that defendant GARCIA would have allowed Plaintiff to declare his firearm and that ten minutes later she would have provided him a boarding pass. But the Defendant Officers' false report seemed to jibe with defendant GARCIA's initial complaint.

34. Defendant Officers noted that Plaintiff possessed at least one concealed carry permit, available only to those with a lack of criminal record. Nevertheless, they ran a LEADS background check on him to try to obtain some evidence of illegality.

35. The check revealed that Plaintiff had been arrested in Lake County, Illinois in 2010, he had pled guilty to a misdemeanor and to six months of supervision.

36. Plaintiff had completed the supervision satisfactorily, nullifying the "conviction", and then had record of arrest expunged. He then began obtaining concealed carry permits.

37. Defendant Officers claimed that the check revealed that Plaintiff had pled guilty to a class 2 felony.

38. In fact, Defendant GULLEY claimed that he "confirmed" Plaintiff's guilty plea had been to a class 2 felony by contacting Lake County's Corrections Department.

39. In fact, a person would have had to contact the Lake County State's Attorney's Office to confirm the LEADS information.

40. Even with the paucity of evidence, Defendant Officers falsely arrested Plaintiff for possession of a firearm by a felon and failure to have a valid FOID.

41. On November 27, 2013, Plaintiff was taken from the Airport's TSA office and placed into custody at the Rockford Police Department. Plaintiff spent the Thanksgiving holiday in Winnebago County Jail ("Jail").

42. On November 30, 2013, Plaintiff bonded out of Jail.

43. On January 15, 2014, the prosecution dismissed the case against Plaintiff.

44. The Rockford Police Department never returned the firearm Plaintiff had attempted to check.

45. Plaintiff was a student during this case and though he attempted to have his books returned, he was not successful, and failed all the classes he had enrolled in that term.

## COUNT I - 42 U.S.C. §1983
## DUE PROCESS

46. Plaintiff URBAN restates and re-alleges all the statements made in paragraphs 1-45 of this Complaint as through fully set forth herein.

47. Defendant Officers, including BRUNO, JOHNSON, HACKBARTH and GULLEY, violated Plaintiff URBAN's right to Due Process under the Fifth and Fourteenth Amendments in the following ways:

   a) When they fabricated reports suggesting strong evidence of criminality against Plaintiff including "the strong odor of marijuana" and that Plaintiff was a convicted felon in possession of a loaded handgun.

48. As a proximate result of this deprivation of due process, URBAN was arrested for, charged with a crime, and incarcerated for a crime he did not commit, and suffered extreme physical and emotional damage.

WHEREFORE, Plaintiff seeks from Defendant officers:

    a)     Compensatory damages in an amount not less than $300,000;
    b)     attorneys fees, pursuant to 42 U.S.C. §1988; and
    c)     any other relief this court deems just and necessary.

## COUNT II
## ILLINOIS MALICIOUS PROSECUTION

49. Plaintiff restates and realleges all the statements made in paragraphs 1-45 and 47-48 of this Complaint as though fully set forth herein.

50. Defendants GARCIA, ALLEGIANT and ALTAMIRANO, individually and/or jointly and in conspiracy, initiated and/or continued a malicious prosecution against Plaintiff, without probable cause.

51. Said prosecution was ultimately determined in Plaintiff's favor on January 15, 2014.

52. Defendants' actions directly and proximately caused the injuries and damages to Plaintiff as claimed above and constitute the tort of malicious prosecution under Illinois law.

WHEREFORE, Plaintiffs demand compensatory damages, in excess of $75,000, jointly and severally, from Defendants named in the Count, plus costs, and whatever additional relief this Court deems equitable and just.

## COUNT III
## FALSE ARREST OF PLAINTIFF UNDER 42 U.S.C. § 1983

53. Plaintiff restates and realleges all the statements made in paragraphs 1-45, 47-48 and 50-52 of this Complaint as though fully set forth herein.
54. On November 27, 2013, Plaintiff was caused to be arrested by the individual defendants.
55. There was no probable cause to arrest URBAN and it was done in violation of his Fourth Amendment right to be free from unreasonable search and seizure.
56. As a result of Defendants' actions, URBAN was arrested and suffered extreme emotional and physical trauma.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

57. Plaintiff restates and realleges all the statements made in paragraphs 1-45, 47-48, 50-52 and 54-56 of this Complaint as though fully set forth herein.

58. Defendants GARCIA, ALLEGIANT and ALTAMIRANO intentionally engaged in extreme and outrageous behavior against the plaintiff, including, but not limited to, falsely imprisoning, falsely arresting, unjustifiably prosecuting and conspiring to do all to Plaintiff.

59. Defendants are also liable for this intentional infliction of emotional distress because it was proximately caused by their actions as set forth above.

60. Defendants' outrageous behavior directly caused the plaintiff to suffer severe emotional distress including anxiety, fear, anger, depression, humiliation, and the injuries set forth above.

WHEREFORE, Plaintiff demand compensatory damages, in excess of $75,000, jointly and severally, from Defendants named in the Count, plus costs, and whatever additional relief this Court deems equitable and just.

        Respectfully submitted,

        /s/Scott T. Kamin
        Attorney for Plaintiff

Scott T. Kamin
Law Offices of Scott T. Kamin
55 E. Jackson Blvd
Suite 1050
Chicago IL, 60604
(312)322-0077
Ill. Attorney No. 6226855